Amir J. Goldstein (Cal. Bar No. 255620)
ajg@consumercounselgroup.com
LAW OFFICES OF AMIR J. GOLDSTEIN
5455 Wilshire Blvd., Suite 1812
Los Angeles, CA 90036
Telephone: (323) 937-0400
Facsimile: (866) 288-9194

Lance A. Raphael (*pro hac vice*)
lance@caclawyers.com
Stacy M. Bardo (*pro hac vice*)           Daniel J. Marovitch (*pro hac vice*)
stacy@caclawyers.com                       dmarovitch@marovitchlaw.com
CONSUMER ADVOCACY CENTER, P.C.             MAROVITCH LAW FIRM, LLC
180 W. Washington St., Suite 700           233 S. Wacker Dr., 84th Floor
Chicago, IL 60602                          Chicago, IL 60606
Telephone: (312) 782-5808                  Telephone: (312) 533-1605
Facsimile: (312) 377-9930                  Facsimile: (312) 488-4206

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA JONSSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>USCB, INC. a California corporation d/b/a USCB AMERICA,<br><br>Defendant. | Case No. CV13-8166 FMO (SHx)<br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARD FOR NAMED PLAINTIFF**<br>Hearing Date: May 21, 2015<br>Hearing Time: 10:00 a.m. PT<br>Courtroom: 22<br>Judge: Hon. Fernando M. Olguin |

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL ALLEGATIONS AND LITIGATION HISTORY ...............1

III. MATERIAL TERMS OF THE SETTLEMENT AGREEMENT............3

    A.   Settlement Class Definition ...............................................................3

    B.   Settlement Amount and Benefits .......................................................4

    C.   Scope of Release ................................................................................6

    D.   Notice to the Class .............................................................................6

    E.   Claims Administration .......................................................................9

IV.  FINAL APPROVAL SHOULD BE GRANTED .....................................9

    A.   CAFA Notice ....................................................................................10

    B.   All Class Certification Requirements are Met .................................10

    C.   Overwhelmingly Favorable Response of the Class to the
        Settlement Notice..............................................................................11

    D.   Strength of Plaintiff's Case and the Risk, Expense, Complexity,
        and Likely Duration of Continued Litigation.................................12

    E.   Amount Offered in Settlement Exceeds What USCB Would be
        Able to Pay After Trial ....................................................................15

    F.   Extent of Discovery and the Stage of the Proceedings....................18

    G.   Experience and Views of Counsel and Absence of Collusion .......19

VI.  ATTORNEYS' FEES SHOULD BE APPROVED ................................20

VII. THE INCENTIVE AWARD SHOULD BE APPROVED.......................23

VIII. CONCLUSION ......................................................................................25

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

i

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
No. 3:08-CV-00248-JAH-WVG, Dkt. 137 (S.D. Cal. Sept. 28, 2012) ........16

*Alea London Ltd. v. Am. Home Servs., Inc.,*
638 F.3d 768 (11th Cir. 2011) ...................................................13

*Arthur v. Sallie Mae, Inc.,*
No. 10-CV-00198, 2012 U.S. Dist. LEXIS 132413
(W.D. Wash. Sept. 17, 2012) .....................................................15

*Barani v. Wells Fargo Bank, N.A.,*
No. 12-2999, 2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014)...........7

*Benzion v. Vivint, Inc.,*
No. 12-61826, Dkt. No. 201 (S.D. Fla. Feb. 23, 2015) ...............................25

*Bowles v. The Dept. of Retirement Systems,*
121 Wash. 2d 52 (1993) ................................................22

*Chapman v. First Index, Inc.,*
No. 09-CV-5555, 2014 U.S. Dist. LEXIS 27556
(N.D. Ill. Mar. 4, 2014) .......................................................14

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ...................................................9, 10

*Custom LED, LLC v. Ebay, Inc.,*
No. 12-CV-00350, 2014 U.S. Dist. LEXIS 87180
(N.D. Cal. June 24, 2014) .........................................................6

*Desai v. ADT Security Servs., Inc.,*
No. 11-1925, Dkt. No. 243 (N.D. Ill. Feb. 27, 2013)....................................25

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

ii

*Ferrington v. McAfee, Inc.*,
No. 10-CV-01455, 2012 U.S. Dist. LEXIS 49160
(N.D. Cal. Apr. 6, 2012) ...................................................................12

*Forcellati v. Hylands, Inc.*,
No. CV-12-1983-GHK, 2014 U.S. Dist. LEXIS 50600
(C.D. Cal. Apr. 9, 2014) ...................................................................12

*Gonzales v. Arrow Fin. Servs.*,
660 F.3d 1055 (9th Cir. 2011) .........................................................16

*Grannan v. Alliant Law Group, P.C.*,
No. C10-02803, 2012 U.S. Dist. LEXIS 8101
(N.D. Cal. Jan. 24, 2012) .................................................................13

*Grant v. Capital Mgmt. Servs., L.P.*,
449 F. Appx. 598 (9th Cir. 2011) .....................................................13

*Harris v. World Fin. Network Nat'l Bank*,
867 F. Supp. 2d 888 (E.D. Mich. 2012) ...........................................13

*Hopkins v. Stryker Sales Corp.*,
11-CV-02786, 2013 U.S. Dist. LEXIS 16939
(N.D. Cal. Feb. 6, 2013) ...................................................................20

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) .................................................22

*In re Apple iPhone/iPod Warranty Litigation*,
No. CV-10-01610, 2014 U.S. Dist. LEXIS 64573
(N.D. Cal. May 8, 2014) .....................................................................6

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................10, 20

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
370 F. Supp. 2d 320 (D. Me. 2005) ..................................................12

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
iii

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................17

*Johnson v. General Mills, Inc.*,
SACV-10-00061, 2013 U.S. Dist. LEXIS 90338
(C.D. Cal. June 17, 2013) ................................................................6

*Knutson v. Schwan's Home Serv., Inc.*,
No. 3:12-CV-0964, 2013 U.S. Dist. LEXIS 98735
(S.D. Cal. July 15, 2013) ......................................................13, 16

*Mais v. Gulf Coast Collection Bureau, Inc.*,
944 F. Supp. 2d 1226 (S.D. Fla. 2013) ........................................14

*Malta v. Fed. Home Loan Mortgage Corp.*,
10-CV-1290-BEN, Dkts. 91-92 (S.D. Cal. June 21, 2013) ...........16

*Manno v. Healthcare Revenue Recovery Grp, LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) ..................................................14

*Moeller v. Taco Bell Corp.*,
No. C-02-5849, 2004 U.S. Dist. LEXIS 32183
(N.D. Cal. Dec. 7, 2004) ...............................................................15

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
No. CV-07-3072, 2009 U.S. Dist. LEXIS 132269
(C.D. Cal. June 24, 2009) .............................................................23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)............................................11, 19

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................17

*Parkinson v. Hyundai Motor Am.*,
796 F. Supp. 2d 1160 (C.D. Cal. 2010) ........................................21

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
iv

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ..........................................................................22

*Pelletz v. Weyerhaeuser Co.*,
592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) ...........................................21

*Radcliffe v. Experian Info. Solutions, Inc.*,
715 F.3d 1157 (9th Cir. 2013) ..................................................................23, 24

*Rodriguez v. W. Pub'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..........................................................................19

*Rose v. Bank of Am. Corp.*,
No. 11-CV- 02930, 2014 U.S. Dist. LEXIS 121641
(N.D. Cal. Aug. 29, 2014) ...............................................................................16

*Sauby v. City of Fargo*,
No. 07-10, 2009 WL 2168942 (D.N.D. July 16, 2009)...................................25

*Steinfeld v. Discover Fin. Servs.*,
No. C12-01118, Dkt. 96 (N.D. Cal. Mar. 10, 2014) ......................................16

*Strong v. Bellsouth Telecomm., Inc.*,
173 F.R.D. 167 (W.D. La. 1997) .....................................................................12

*Vandervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014).........................................................24, 25

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................................21, 22

**Statutes, Rules & Regulations**

15 U.S.C. § 1692....................................................................................passim

47 U.S.C. § 227......................................................................................passim

Cal. Civ. Code § 1788............................................................................passim

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
v

Fed. R. Civ. P. 23..................................................................passim

**Publications**

*Manual for Complex Litigation, Fourth* (2004) ...........................................13

Sherrie R. Savett et al., *Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs*, 936 PLI/Corp. 321, 340 (1996) ..................25

**Exhibits**

Exhibit 1 - Declaration of Settlement Administrator Lacey Racines

Exhibit 2 - Declaration of Class Counsel Lance Raphael

Exhibit 3 - Declaration of Class Counsel Dan Marovitch

Exhibit 4 - Declaration of Class Counsel Amir Goldstein

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
vi

## I.     INTRODUCTION

Plaintiff Brenda Jonsson filed this class action against Defendant USCB, Inc. after she received multiple autodialed calls to her cell phone seeking to collect another person's debt.  The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), restricts autodialed and prerecorded voice calls to cell phones, and Ms. Jonsson sought relief for herself and others whom she alleged USCB called without consent.   On January 26, 2015, after considering the Parties' submissions and analyzing the potential relief available to the putative class should the case go to trial, this Court preliminarily approved a class action settlement of the claims raised in this action.  (Dkt. 75).  The robust notice plan implemented soon thereafter, and consistent with the January 26, 2015 preliminary approval order, received an overwhelmingly favorable response – more than 22,322 claims were submitted, with not a single person objecting or requesting exclusion.  Further, no objections were received in response to the CAFA Notice implemented under the Class Action Fairness Act, 28 U.S.C. § 1715(b).   Accordingly, Plaintiff now requests final approval of the Parties' Class Action Settlement Agreement.

## II.     FACTUAL ALLEGATIONS AND LITIGATION HISTORY

USCB vigorously defended this action.  USCB asserted multiple affirmative defenses, disputed that a class should be certified, and filed a motion to stay this litigation pending multiple third-party petitions to the FCC seeking clarity on the scope of the TCPA.  Specifically, USCB fought this case on the merits claiming, among other things, that: (a) the dialers it uses do not qualify as "autodialers" under the TCPA; (b) it had the prior express consent of the alleged debtors to call the numbers dialed, including Plaintiff's cellular number; and (c) pending petitions for FCC declaratory rulings could render the TCPA inapplicable to non-telemarketing

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

1

calling activities like debt collection altogether.  The Parties engaged in extensive written and oral discovery on the merits and on class issues, which included depositions of Plaintiff and USCB third party dialer Global Connect,[1] a FOIA request to the FCC, and subpoenas to more than a dozen wireless carriers.  Plaintiff also examined USCB's insurance policy, demanded financial information to assess the company's net worth and ability to withstand a monetary judgment, and filed an amended complaint to add alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*

In between briefing USCB's request to have this matter stayed pending an expected FCC ruling on the TCPA (which Defendant argued would affect this case), the Parties engaged in two separate all-day mediations.  While the first mediation was unsuccessful, the second resulted in the Parties agreeing upon a term sheet establishing the general parameters of a class settlement.  The Parties exchanged multiple drafts of a class settlement agreement and proposed class notice forms and Plaintiff drafted and filed a memorandum and supporting declarations seeking preliminary approval of the settlement.  (Dkts. 63-64).  On October 16, 2014, this Court considered the Parties' first settlement agreement and did not grant preliminary approval, finding there were certain items that needed clarification and noting there should be no reversion of the agreed upon $2,750,000.00 settlement fund if less than a certain number of claims were received.  Thereafter, the Parties re-negotiated the settlement agreement, further explained the cost and impact of the

---

[1]      As explained in Plaintiffs' preliminary approval submission, USCB, a collection agency, employs the use of automatic dialing and artificial/prerecorded voice technology through third parties Five9, Inc. ("Five9") and Global Connect, LLC ("Global Connect").  *See* Dkt. 71.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

2

prospective relief component of the settlement, negotiated a no-reverter agreement, and supplemented the briefs and declarations in support of preliminary approval. (Docs. 70-71).

On January 8, 2015, the Parties appeared for a second preliminary approval hearing.   Noting that the initial settlement agreement had been appropriately amended, this Court granted preliminary approval and ordered the Parties to effectuate notice.  (Dkt. 75).  Since Class Notice issued and the Claim Period has ended, this brief is filed in anticipation of the May 21, 2015 Fairness Hearing.

## III.    MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

Plaintiff now requests final approval of the Parties' Class Action Settlement Agreement.[2]

### A.    The Settlement Class

The following Settlement Class was certified for settlement purposes upon entry of the preliminary approval order and should now be certified at final approval:

> All persons in the United States whose cellular telephone number, at any time between November 5, 2009 and May 15, 2014, Defendant or another on its behalf called using an artificial or prerecorded voice and/or equipment with the capacity to dial numbers without human intervention, where the person owning the number called was not the person that Defendant intended to call or not a person who had consented to receiving such calls.

After extensive review of Defendant's and its third party dialers' call records, the Parties determined that USCB called 621,278 unique cell phone numbers during the

---

[2]    Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Settlement Agreement, attached as Ex. 1 to the November 17, 2014 Notice of Motion for Preliminary Approval ("Agreement"), Dkt. 70-1.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

3

Class Period. (Dkt. 71-C, Declaration of David Christopherson). However, the Settlement Class does not contain 621,278 members. Instead, the Settlement Class is the portion of the 621,278 unique cell number owners who either: (a) did not give consent to USCB to call their cell phones; or (b) received calls from USCB seeking to collect a debt from someone else (*i.e.*, "wrong number" calls).

The Parties agree that approximately 4,000 "wrong number" calls were complained about in a one-year period, resulting in an estimated range of 16,000 to 20,000 "wrong number" class members out of the 621,278 cell phone numbers during the applicable statute of limitations period. (Dkt. 70-1, Agreement at A9, A10.) This 16,000 – 20,000 "wrong number" group, plus a subset of the remaining 605,278 – 601,278 group who allege they did not grant USCB consent, is the Settlement Class.

## B.    Settlement Amount and Benefits

Per the terms of the preliminarily approved Settlement Agreement, USCB paid $2,750,000 to the Settlement Administrator, which was held in an interest-bearing account pending final approval (after subtraction of the Settlement Administrator's initial installment payment for notice mailing and administrative set-up costs); (Dkt. 70-1, Agreement at B35.) KCC has agreed to cap its services for the remaining work on this case so that the $394,000 administration costs cap is not disturbed. (Exhibit 1, Racines Decl. at ¶ 26).

Plaintiff requests an incentive award of $10,000 and Class Counsel request fees of $825,000 and costs of $18,342.37 (which requests are supported below). Because counsel does not request the full $50,000 costs reimbursement permitted by the Agreement, an additional $31,657.63 is therefore available for distribution to

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
4

claimants, for a total of $1,502,657.63, greater than the anticipated $1,471,000 at preliminary approval and as the class was advised.

This negotiated settlement fund of $1,502,657.63 to the class is reasonable because there were not 621,278 persons eligible for relief but the smaller subset of persons described in Section A above. To ensure that the fund was not improperly diluted, and that only true class members were eligible, the Settlement appropriately required class members to claim in and state, under penalty of perjury: (a) the cell phone number that was called; and (b) that USCB did not have consent to call such number; or (c) that they received calls for another alleged debtor on their cell phones. (Exhibit 1, Racines Decl. at Ex. C, Claim Form). The cell phone numbers provided by the claimant class members were then cross-checked against USCB's list of 621,278 numbers to ensure class membership and the validity of claims made.

Each valid claimant[3] will therefore receive a *pro rata* share equal to approximately $67.00 - $71.00 if this Settlement is approved. This is higher than the anticipated $45.00 floor per claimant discussed in the preliminary approval filings and Class Notice and represents a significant recovery to the Settlement Class

---

[3]  The parties agree that the vast majority of the 22,156 timely filed online claims are valid given the claim submission procedures verified prior to the claims period being opened. There is a group of approximately 1,300 persons who provided telephone numbers that were not on the USCB list of 621,278 that both parties agree are invalid because these individuals are not class members. There is a group of approximately 58 persons, some of whom submitted multiple claims for the same telephone number, which are being verified by KCC so the parties can determine whether to honor those claims. Finally, there is a group of approximately 166 online claim forms submitted after the claim filing deadline. The parties will continue to monitor with KCC any additional late or paper claim forms that come in to provide an updated count prior to the final fairness hearing. The $67.00 - $71.00 range is provided now because the exact amount per claimant is affected by the final total number of agreed upon valid claims.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

5

in a case where there was a significant risk of loss, a burning limits insurance policy, and USCB's professed inability to withstand a judgment, as discussed below.

Any amount remaining in the Settlement Fund from checks left un-cashed for more than 120 days will not revert to USCB but instead, be distributed to a Court-approved *cy pres* recipient.  In this case, the Parties recommended the National Consumer Law Center ("NCLC") in Boston, Massachusetts as the *cy pres* recipient.  (Dkt. 70-1, Agreement at D1(f).)  NCLC has been approved for *cy pres* awards on numerous occasions throughout the Ninth Circuit.  *See*, *e.g.*, *Custom LED, LLC v. Ebay, Inc.*, No. 12-CV-00350, 2014 U.S. Dist. LEXIS 87180 (N.D. Cal. June 24, 2014); *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 U.S. Dist. LEXIS 64573 (N.D. Cal. May 8, 2014); *Johnson v. General Mills, Inc*., SACV-10-00061, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013).

This significant settlement benefit renders final approval appropriate.

### C.    Scope of Release

All persons who meet the Settlement Class definition will provide USCB a release only as to the claims raised in this action that relate to USCB making or causing to be made autodialed and/or prerecorded or artificial voice calls to the Settlement Class Members' cell phones between November 5, 2009 and May 15, 2014.  Because the release the class members are granting is limited in scope to the particular claims raised in this Action and the Settlement Class was notified of the release's terms per the Class Notice plan, it should be approved as fair and reasonable.  (Dkt. 70-1, Agreement at D3.)

### D.    Notice to the Class

Under Rule 23(c)(2), notice must be directed in a reasonable manner and designed to be the "best notice that is practicable under the circumstances…"  Fed.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
6

R. Civ. P. 23(c)(2)(B).  In this Court's preliminary approval order, it determined the proposed notice plan constituted "the best practicable notice to the class members." (Dkt. 75 at p. 27).

Here, the outcome of the approved notice plan was particularly effective. First, more than 67% of the potential class members were sent direct mail notice, 17% more than anticipated at the preliminary approval hearing.  (Exhibit 1, Racines Decl. at ¶ 10).  This direct mail notice plan has been approved by other courts.  *See, e.g., Barani v. Wells Fargo Bank, N.A.*, No. 12-CV-2999, 2014 U.S. Dist. LEXIS 49838, at *27-28 (S.D. Cal. Apr. 9, 2014) (notice plan approved for proposed TCPA class action settlement with postcard notice to class members identified via reverse directory lookup) (final approval order entered March 6, 2015).

Second, of the group sent postcards, less than 6% of those postcards were returned as undeliverable with no ability to obtain a better address for re-mailing. (Exhibit 1, Racines Decl. at ¶ 22.)

Third, the direct notice mailing was supplemented by a wide-reaching Media and Website Notice campaign that included the following:

(1)     Purchase of 10,100,691 unique internet banner impressions targeted to adults 18 years of age or older who own cell phones (Exhibit 1, Racines Decl. at ¶ 16);

(2)     Issuance of a national press release sent to approximately 6,450 media outlets and picked up by an additional 225 websites with a combined potential audience of 19,524,000 persons (including the *Boston Globe, Washington Business Journal, San Francisco Business Times, Minneapolis Star Tribune, Miami Herald*, WISTV NBC-10 (Columbia, SC), WAFB CBS-9 (Baton Rouge, LA), and WXIX Fox-19 (Cincinnati, OH)) (Exhibit 1, Racines Decl. at ¶ 17);

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
7

(3)      Reporting of the Settlement on class action websites such as www.classactionnews.com, www.law360.com, www.jerebeasleyreport.com, and www.debtconnection.com;

(4)      Monitoring of an Interactive Voice Response ("IVR") telephone number system to provide details about the settlement and record requests for notice and claim forms (Exhibit 1, Racines Decl. at ¶ 13); and

(5)      Hosting a website at www.DebtCollectionTCPASettlement.com to provide details about the Settlement, permit class members to file claims and exclusion requests online, and examine court pleadings (including the First Amended Complaint, Settlement Agreement, and Preliminary Approval Order) (Exhibit 1, Racines Decl. at ¶ 14).

The effectiveness of this Media Notice and Website campaign is apparent as KCC reported that approximately 2,931 claim forms were filed by persons that did not provide unique claim ids from a mailed postcard notice.  It is therefore reasonable to infer that a portion of these individuals were informed about the settlement through means other than direct mail notice.[4]

More importantly, there was no alternative method of distributing notice that could have been more practically designed to reach the potential Settlement Class. The Settlement Administrator's receipt of 22,322 claims, 4,740 requests for mailed class notices and claim forms, and 16,253 calls to the settlement notification phone

---

[4]      Each direct mail notice contained a unique claim id (tied to a particular cell phone number on USCB's list) that the class member was asked to include on his or her claim form submission.  A potential class member who reviewed the Media or Website Notice would not have access to a unique claim id but these individuals were still provided the opportunity to make a claim based on their cell phone number being called.

---

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

8

line is direct evidence of the class notice's sufficiency.  (Exhibit 1, Racines Decl. at ¶¶ 23, 27).

Finally, the notice was clear, straightforward, and provided persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citation omitted).  The notice plan was appropriately preliminarily approved and its effective implementation warrants final approval.

## E.    Claims Administration

In response to the various forms of class notice, no objections or requests for exclusion[5] were received but, as of April 13, 2015, 22,322 claims were filed.  The Parties will update the Court if additional late claims are filed in advance of the Fairness Hearing.

## IV.    FINAL APPROVAL SHOULD BE GRANTED

The Settlement is fair, reasonable, and adequate and deserving of final approval.  To determine whether final approval is warranted, courts in this district typically examine the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

---

[5]    A request for exclusion form was available on the settlement website (as was the claim form) and was also mailed upon request with the 4,730 long form notice packet requests.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

9

(6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (*citing Churchill Vill.,* 361 F.3d at 575).  Each of these factors are discussed in the topics below.

### A.    CAFA Notice

Pursuant to the Class Action Fairness Act, USCB served notice of the proposed Settlement upon the appropriate state and federal officials as required by 28 U.S.C. § 1715(b).  Notice of the Parties' first settlement agreement was mailed 7 days after Plaintiff filed the proposed settlement with this Court.  (Exhibit 1, Racines Decl. at ¶ 5).  After the Parties negotiated the second set of settlement papers (for which this Court granted preliminary approval), CAFA notice was mailed again, and also within the 10 day window required by statute.  (Exhibit 1, Racines Decl at ¶ 6). The Parties received no objections and there is thus no presence of a governmental participant in this case.  (Exhibit 1, Racines Decl. at ¶ 7).

### B.    All Class Certification Requirements are Met

Plaintiff's memorandum in support of her motion to certify the class for settlement purposes set forth each requirement for certification under Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3) (predominance and superiority) and described how each was met.  (Dkt. 71).  This Court took note of those factors and conditionally certified the class for settlement purposes in the January 26, 2015 preliminary approval order.  (Dkt. 75). Since no one has objected to certification, and the facts available to the Parties and this Court have not changed since the January ruling, the Class should be finally certified for settlement purposes.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

10

**C.     Overwhelmingly Favorable Response of the Class to the Settlement Notice**

In this case, not a single objection to the Settlement was received.  Given the widespread notice (including 418,731 notice postcards and a significant Media Campaign, including the announcement of this settlement on multiple websites that even the Parties did not anticipate), the response to the Settlement can only be described as overwhelmingly favorable.  Further, as explained above, Defendant sent notices to state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), on September 19, 2014 and November 25, 2015.  (Exhibit 1, Racines Decl. at ¶¶ 5-6).  In response, no state or federal official filed any objection to the settlement.

"'The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court.'"  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).  Here, while the Settlement Website provided specific instructions on how to file an objection and the direct mail notice set forth the class members' rights to object and the dates by which to do so, no objections were received.  (Exhibit 1, Racines Decl. at Exs. A and B).  "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Id.* at 529.

In contrast to the zero objections, 22,322 claims were filed as of April 13, 2015 – clearly, the class members were informed and able to indicate their positive reaction to the Settlement.  This claims rate (5.3% of the 418,731 postcards mailed

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

11

and 3.5% of the total possible universe of cell phone numbers called) is consistent with other approved settlements in consumer class actions.  *See*, *e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F. Supp. 2d 320, 321 (D. Me. 2005) (2% submission rate); *Strong v. Bellsouth Telecomm., Inc.*, 173 F.R.D. 167, 169 (W.D. La. 1997) (4.3% claims rate); *Forcellati v. Hylands, Inc.*, No. CV-12-1983-GHK, 2014 U.S. Dist. LEXIS 50600, at *17 (C.D. Cal. Apr. 9, 2014) (" '[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.' " (*quoting Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2012 U.S. Dist. LEXIS 49160, at *13 (N.D. Cal. Apr. 6, 2012))).

In light of these considerations, there is no reason to deny final approval.

## D.    Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

Plaintiff is confident in the merits of her case but the litigation thus far clearly demonstrated that, absent settlement, the Parties would expend significant resources in further discovery and motion practice, all without the assurance of any substantive benefit to the Class beyond that which is afforded under the Settlement.

The major concern moving forward to trial is the burning limits provision in USCB's insurance policy.  (Dkt. 71-2, Raphael Decl. at ¶ 24.)  As described in defense counsel's Declaration submitted in connection with preliminary approval, USCB is insured by one policy for this litigation and it is a "depleting limits" policy, meaning that defense fees and costs erode the policy limits.  (Dkt. 71-3, Wright Decl. at ¶ 3).  With anticipated litigation expenses of up to $1,825,000 in defense fees and costs, the policy would be depleted to $1,175,000, a figure that is significantly less than the $2,750,000 negotiated Settlement Fund.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

12

If a defendant credibly asserts its sole source of funds for recovery is an insurance policy, a settlement for the policy limit is fair and reasonable. *See Grannan v. Alliant Law Group, P.C.*, No. C10-02803, 2012 U.S. Dist. LEXIS 8101, at *16 (N.D. Cal. Jan. 24, 2012) ("Counsel determined that Alliant's insurance policy, totaling $1,000,000.00, was the sole source of funds from which plaintiffs could recover...Although the TCPA contemplates an award of at least $500 in statutory damages per violation, the discovery conducted revealed that the amount of statutory damages warranted by the number of violations significantly exceeded Alliant's only available source of funds."). *See also Manual for Complex Litig., Fourth*, § 21.631 (2004) (listing "defendant's ability to pay" as factor relevant to evaluation of proposed class settlement).

Additionally, USCB contested liability and that class certification was appropriate. While the TCPA is, in essence, a strict liability statute, whether a defendant had the "prior express consent" of the called party is an affirmative defense. *See Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 892 (E.D. Mich. 2012) (" 'The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited [calls].' ") (*quoting Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011)) (citation omitted); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-0964, 2013 U.S. Dist. LEXIS 98735, at *21-22 (S.D. Cal. July 15, 2013) (noting that "establishing a common question regarding violations of the TCPA does not require a showing of intent[,]" and that "[a]ll that is required is ... that [defendant] called Plaintiffs (1) using an automated dialer or artificial or prerecorded voice; (2) in non-emergency situations and without prior express consent; (3) on their cellular telephones"). *See, e.g., Grant v. Capital Mgmt. Servs., L.P.*, 449 F. Appx. 598, 600, n.1 (9th Cir. 2011) ("'[E]xpress consent'

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

13

is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *accord Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1233 (S.D. Fla. 2013) (citation omitted).

USCB contends it had "prior express consent" and asserts the debtors whom it intended to call provided cell numbers to their respective creditors, USCB's clients. (Dkt. 56, Answer to FAC at 9:24-28.)  Although it would be USCB's burden to prove such consent, if this Court rejects the Settlement, Plaintiff expects USCB to argue that individualized questions of consent prohibit certification.  *See Chapman v. First Index, Inc.*, No. 09-CV-5555, 2014 U.S. Dist. LEXIS 27556 (N.D. Ill. Mar. 4, 2014) ("Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case.").

USCB will also argue, as telegraphed in its prior motion to stay (Dkt. 51), that the Global Connect and Five9 dialers it used to call Plaintiff and the other class members do not constitute "automatic telephone dialing systems" under § 227(a)(1) of TCPA.  While Plaintiff denies such arguments are valid – *see generally* (Dkt. 55, Pl.'s Resp. to Def.'s Mot. Stay at 10:1-22, 18:9-19:14); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) ("Whether the provision of a phone number on [hospital] admissions paperwork equates to express consent is a question common to all class members....On this defense, all class members will prevail or lose together, making this another common issue to the

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

14

class.") – they still present risk to the Class of a potential <u>total</u> loss that can be avoided entirely by settlement approval.[6]

Additionally, because statutory damages are requested, Plaintiff will face due process arguments. *See Moeller v. Taco Bell Corp.*, No. 02-5849, 2004 U.S. Dist. LEXIS 32183, at *8 (N.D. Cal. Dec. 7, 2004) ("It is possible that statutory damages could violate due process if the penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable.") (quotations and citation omitted). Thus, even if Plaintiff and the Class obtained a judgment equal to the full amount in damages, it is possible, if not likely, that such award would be reduced – and would not be remotely collectable from Defendant based on its current financial status.  (Dkt. 71-3, Sterman Decl. at ¶ 10.)

Finally, although Plaintiff believes she has a strong case for certification, "[c]ourts have split on class certification in TCPA cases, increasing the risk of maintaining the class action through trial." *Arthur v. Sallie Mae, Inc.*, 10-CV-00198, 2012 U.S. Dist. LEXIS 132413, at *4 (W.D. Wash. Sept. 17, 2012).  Thus, a rejection of the Settlement will result in protracted litigation and potentially a lesser result.

### E.   Amount Offered in Settlement Exceeds What USCB Would be Able to Pay After Trial

The settlement amount of $2,750,000 is fair, reasonable, and adequate and accounts for more than 91% of the applicable USCB insurance policy.   The

---

[6]   Plaintiff's FDCPA and Rosenthal Act claims would similarly be subject to potential loss should the Court find, (1) USCB's calls did not violate the FDCPA's prohibitions against harassing, unfair, or unconscionable collection activity, or (2) that such violations were nonetheless subject to the FDCPA's "bona fide error" defense, *see* 15 U.S.C. § 1692k(c).

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

15

anticipated amount to each claimant class member, a range of $67.00 - $71.00, is also fair and reasonable.[7]  *See Rose v. Bank of Am. Corp.,*No. 11-CV-02930, 2014 U.S. Dist. LEXIS 121641, at *31 (N.D. Cal. Aug. 29, 2014) ($20-40 approved, less than what claimant will receive herein) (*citing Malta v. Fed. Home Loan Mortgage Corp*., 10-CV-1290-BEN (S.D. Cal.) where $84.82 was deemed fair and reasonable); *Knutson*, 2014 U.S. Dist. LEXIS 99637 at *10 (preliminary approval granted where, "The Settlement Agreement provides for a maximum recovery by each claiming Class Member of a $20 settlement check plus a merchandise voucher in the amount of $80 that may be used to purchase products from Schwan's website."); *Steinfeld v. Discover Fin. Servs*., No. 3:12-CV-01118-JSW, Dkt. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt*., Inc., No. 3:08-CV-00248-JAH-WVG, Dkt. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40.00 each).

      As Plaintiff discussed in her preliminary approval filing, while the recovery here is less than the full amount a jury could technically award under the TCPA, FDCPA, and Rosenthal Act,[8] fractional recoveries have been approved for

---

[7]    Plaintiff will supplement her filing to provide the final claims numbers in advance of the May 21, 2015 Fairness Hearing.

[8]    The maximum statutory damages fund Plaintiff would be able to seek for the class under the FDCPA and Rosenthal Act is equal to the lesser of 2% of the Defendant's net worth or $1,000,000, assuming Plaintiff would succeed in arguing that statutory damages under both Acts could be stacked.  The Ninth Circuit declined to express an opinion on whether the FDCPA might preempt class recovery under both the FDCPA and the Rosenthal Act when the total statutory damages exceed the cap articulated in § 1692k.  *See Gonzales v. Arrow Fin. Servs*., 660 F.3d 1055, 1068, n. 16 (9th Cir. 2011).  It is therefore not settled that Plaintiff could have received twice the statutory damages cap here.  As explained in her preliminary approval filing, the parties differed on how USCB's net worth was

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

16

settlement purposes in the Ninth Circuit.  *See*, *e.g.*, *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that [even] a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair…This is particularly true in cases, such as this, where monetary relief is but one form of the relief requested by the plaintiffs") (citation omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming district court's settlement approval because "roughly 1/6 of the potential recovery … is fair and adequate").

The Settlement significantly also includes five years of prospective relief, specifically designed to stop the wrongful conduct alleged in this Action.  For a period of five years from the Settlement's effective date, USCB will partner with Neustar[9] to determine whether a number is a cellular phone number.  If the telephone

---

calculated.  The best case scenario under Plaintiff's analysis was $26,608.32 in available statutory damages (twice the 1% of net worth figure) under both the FDCPA and Rosenthal Acts, to be divided amongst all class members who could be located.

Under the TCPA, assuming an average of 5 calls per cell number, the total approximate result for each class member could be as high as $2,500.  While the settlement provides for a monetary result which is admittedly a smaller percentage of that $2,500 per class member, that assumes USCB could absorb such a judgment and that Plaintiff would win on a class basis at trial.

At trial, the best case scenario would be an average $2,500 per class member for a TCPA victory and a pro rata share of $26,608.32 for FDCPA/Rosenthal Act victories.  The $67-71 result here is a certainty, without further delays or appeals.

[9]     Neustar employs real-time scrubbing services on all telephone numbers placed into a call database.

---

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

17

number is determined to be cellular, Neustar will analyze whether the name of the debtor on the debtor account assigned for collection is the same name associated with its scrub results.  If the names do not match, USCB will remove that number from its dialing system.  If USCB fails to institute the above measures, or if it ceases to maintain such measures for the entirety of the five-year period, USCB shall have 30 days to cure upon receipt of notice from Plaintiff of a breach.  If the breach is not cured, Plaintiff shall be free, without further notice to Defendant, to move to enforce the injunctive relief aspects of this Agreement, with the Court retaining jurisdiction to enforce the Settlement.  (Dkt. 70-1, Agreement at D2).  USCB expects this additional prospective relief to cost approximately $315,000.00 (based upon an estimate of $.15 per number scrubbed, multiplied by an average of 35,000 numbers per month).  (Dkt. 71-7, Sean Escobar Decl. at ¶ 5).

These significant benefits render final approval appropriate.

### F.      Extent of Discovery and the Stage of Proceedings

Because the Parties conducted extensive discovery, Plaintiff and Class Counsel were able to make fully informed decisions while engaging in settlement negotiations and recommending this Settlement for final approval.  Filed with this Memorandum is a Declaration from Plaintiff's Counsel Lance Raphael, detailing the hours spent reviewing the merits of this case.[10]  (Exhibit 2, Raphael Decl.).  As set forth in Raphael's Declaration, Plaintiff obtained records of millions of calls to and from USCB and reviewed communications, manuals, contracts, and other documents relevant to the calls and USCB.  (Exhibit 2, Raphael Decl. at ¶¶ 57-58).  Counsel also conducted discovery relating to USCB's insurance policy and net

---

[10]      Messrs. Marovitch and Goldstein also prepared Declarations, attached as Exhibits 3 and 4, respectively.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

18

worth, reviewed thousands of pages of USCB and its dialers' communications, manuals, contracts, and other relevant documents, issued FOIA requests to the FCC and reviewed subpoena responses from third-party sources Global Connect, LLC and Five9, Inc., reviewed produced call record data, took the deposition of Global Connect, retained a public record scrubbing company and evaluated its identification procedures for determining cell phone numbers from the call record data, and issued and reviewed subpoena responses from 14 cellular telephone carriers (Virgin, Google, AT&T, Cricket, Level 3, T-Mobile, Aio, MetroPCS, Verizon, Sprint, Qwest, U.S. Cellular, Boost, and Peerless).  (Exhibit 2, Raphael Decl. at ¶¶ 57-58). Finally, counsel spent significant time researching other similar class action settlements, notice plans, and claim rates to ensure the fairness of this Settlement. (Exhibit 2, Raphael Decl. at ¶¶ 57-58).

This work demonstrates that Plaintiff and her counsel were in an informed position to negotiate and now recommend this Settlement for final approval.

## G.   Experience and Views of Counsel and Absence of Collusion

This Settlement was obtained after significant discovery and two all-day mediations before experienced third-party neutrals.  It is the product of arms-length negotiations as both sides engaged in significant give-and-take.  Further, as this Court noted in granting preliminary approval, Class Counsel is experienced in class action litigation and has been willing to vigorously prosecute this Action.  (Dkt. 75 at p. 13).  Accordingly, their judgment in recommending this Settlement for final approval should be considered.  *See*, *e.g.*, *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties.")  *See also Nat'l Rural Telecomms.*, 221 F.R.D. at 528 (noting

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

19

that " ' great weight ' " should be given to the recommendation of counsel, "who are most closely acquainted with the facts") (citation omitted).

## VI.   ATTORNEYS' FEES SHOULD BE APPROVED

The attorneys' fees portion of the Settlement was clearly disclosed to the class members (in all forms of class notice) and no objection to fees was received. Accordingly, Class Counsel now requests approval of fees in the amount of $825,000 and costs of $18,342.37 (less than the $50,000 cap negotiated by the Parties and preliminarily approved).

Counsel is cognizant of the Ninth Circuit's warning that "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. That's why in this case, counsel negotiated an attorney fee that was reasonable under both a lodestar and a percentage of fund analysis.

Counsel's lodestar is in excess of $460,243, given that this does not include all of the time spent finalizing these final approval materials, attending the final fairness hearing, and effectuating the settlement's terms if final approval is granted. If this Court applies a lodestar methodology, counsel requests what will end up being less than a 1.8 multiplier.

"Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors[.]" *Id*. at 41-42 (internal citations omitted). A multiplier accounts for the risk assumed when taking on a contingent fee case like this one. *See Hopkins v. Stryker Sales Corp*., No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939, at *11 (N.D. Cal. Feb. 6, 2013). The lodestar

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

20

multiplier requested here is less than the "2 to 4 or higher" range for multipliers, as noted by the court in *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (citations omitted). *See also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051, n. 6 (9th Cir. 2002), *cert denied* 537 U.S. 1018 (2002) ("a range of 0.6-19.6, with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range)"). Multipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied. 3 NEWBERG § 14.03 at 14-5. *See also Pelletz v. Weyerhaeuser Co*., 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (award of fees equal to "[t]he modest 1.82 multiplier requested by Class Counsel [which] falls well within the range of multipliers approved by Ninth Circuit courts.") (citation omitted).

In this case, the proposed multiplier is warranted given Class Counsel's zealous pursuit of discovery and negotiation of a settlement that resulted in a recovery of greater than 91% of the applicable insurance policy, a solid claims rate, no objections or requests for exclusions, and USCB's agreement to change its cell phone calling practices on a going-forward basis.

Class Counsel took the risk of loss, advanced $18,342.37 in costs and have thus far represented Plaintiff and the Class without compensation. Attached to this memorandum are declarations from counsel attesting to their hours spent, their experience, and their hourly rates. In summary, counsel calculated their fees based on the following rates:

| Attorney | Years Experience | Hourly Rate | Hours Spent | Total |
|---|---|---|---|---|
| L. Raphael | 23 yrs | $630 | 168.6 | $106,218 |
| S. Bardo | 14 yrs | $500 | 231.75 | $115,875 |

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

21

| M. Hilicki | 21 yrs | $500 | 47.8 | $23,900 |
| A. Goldstein | 13 yrs | $400 | 29.5 | $11,800 |
| A. Krumhorn | 12 yrs | $400 | 7.3 | $2,920 |
| D. Marovitch | 4 yrs | $310 | 593.4 | $183,954 |
| J. Limbo | 5 yrs | $275 | 24.2 | $6,655 |
| Paralegals | n/a | $110 | 81.1 | $8,921 |

These hourly rates were determined by a consideration of the following factors, which are consistent with those recommended by Rule 1.5 of the American Bar Association's Code of Professional Conduct – the actual billing rate paid by clients, the contingent nature of work, and survey/local community rates in the Chicago and Los Angeles markets. Counsel's experience in class action litigation and their record in the successful prosecution of fair debt and class actions are detailed in their accompanying declarations, Exhibits 2, 3, and 4, and is also to be considered in the setting of their hourly rates. The reasonableness of these rates and the time spent (given the work performed and result achieved), justify application of a lodestar method with a less than 1.8 multiplier.

The appropriateness of this fee can be cross-checked against the "percentage of the fund" methodology. Here, the $825,000 is 30% of the total settlement fund, also a reasonable fee. The "benchmark" in the Ninth Circuit begins at 25% of the settlement fund, and 20-30% "is the usual range." *Vizcaino*, 290 F.3d at 1047 (*citing Bowles v. The Dept. of Retirement Systems*, 121 Wash. 2d 52 (1993) and *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (approving "that the 'bench mark' percentage for the fee award should be 25 percent[,]" and noting that "[o]rdinarily, ... fee awards range from 20 percent to 30 percent of the fund created"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377, 1378

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

22

(N.D. Cal. 1989) (finding that, where "[t]he Ninth Circuit's [*Graulty*] opinion does not appear to foreclose, upon appropriate findings, the setting of a different benchmark, since it left 'to the district court the task of determining what this reasonable percentage should be[,]'" and where, "[a]s documented by the lengthy list of cases below, ... in most recent cases the benchmark is closer to 30%[,]" that a 30% benchmark "will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions") (citation omitted).  In fact, "[n]ationally, the average percentage of the fund award in class actions is approximately one-third." *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV-07-3072, 2009 U.S. Dist. LEXIS 132269, at *10 (C.D. Cal. June 24, 2009) (citing two empirical studies reviewing hundreds of class actions, one of which found that "[m]edian rates ranged from 27% to 30% [with] ... [m]ost fee awards ... between 20% and 40% of gross monetary settlement[,]" and the other finding that "attorneys' fees in class actions averaged approximately 32% of the recovery, regardless of the case size, and averaged 34.74% when the fees and expenses were added together").

For all these reasons, counsel seek final approval of a fee award of $825,000 and costs of $18,342.37.

## VII.  THE INCENTIVE AWARD SHOULD BE APPROVED

No objections were received as to the requested $10,000 incentive award for Plaintiff Brenda Jonsson.  This Court preliminarily approved the award and stated, "In *Radcliffe*, the court reversed approval of a class action settlement because the 'conditional incentive awards caused the interests of the class representatives to diverge from the interests of the class because the settlement agreement told class

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

23

representatives that they would not receive incentive awards unless they supported the settlement. *Radcliffe v. Experian Info. Solutions, Inc*., 715 F.3d 1157, 1161 (9th Cir. 2013).   Here it does not appear that the incentive award is conditioned on plaintiff's support of the settlement." (Dkt. 75 at p. 25).  That is correct.

Plaintiff Brenda Jonsson actively participated in the litigation and settlement of this action and thus, her interests were consistently aligned with the class. (Dkt. 71-1).  Plaintiff consulted counsel, gathered evidence, obtained phone records from her carrier, compiled recordings and took screenshots of the calls to her phone, clarified facts for Class Counsel pre-suit and as needed throughout the litigation, reviewed and edited the pleadings, answered discovery, appeared for a deposition, produced documents, participated in the mediation between the parties, and ultimately reviewed settlement documents and approved the Settlement.  Plaintiff estimated she spent in excess of 30 hours of time participating in and aiding counsel in the prosecution of this case and counsel's review of their timesheets support this estimate.  (Dkt. 71-1, Jonsson Decl. at ¶¶ 3, 10.)  (Exhibit 2, Raphael Decl. at ¶ 58).

Plaintiff rejected an individual settlement offer attempt "pick off" by USCB early on in this litigation, affirmatively placing the Class' ability to obtain redress for Defendant's calls before her own interests in a quick, individual payout.  Ms. Jonsson's name was publicized in the class notice and in media articles across the internet, subjecting her to public scrutiny, a risk she assumed for the benefit of the class.   Plaintiff aggressively litigated this Action, and helped obtain a sizable settlement and this award should be approved as it is consistent with incentive awards in other cases.  Moreover, the incentive award sought here is less than or equal to amounts awarded in other consumer class actions, including under the TCPA.  *See, e.g., Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal.

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

24

2014) (awarding $10,000 incentive award in TCPA class settlement); *Benzion v. Vivint, Inc.*, No. 12-61826, Dkt. No. 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, Dkt. No. 243, ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement); *Sauby v. City of Fargo*, No. 07-10, 2009 WL 2168942, at *3 (D.N.D. July 16, 2009) (approving $10,000 incentive award, citing Sherrie R. Savett et al., *Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Award Payments to Named Plaintiffs*, 936 PLI/Corp. 321, 340 (1996), for "listing 52 cases involving incentive award payments wherein the plaintiffs were awarded between $1,000 and $200,000, with over half of the awards falling between $5,000 and $10,000").  The requested incentive award should be approved based on Plaintiff's devoted effort on behalf of the Class, culminating in this highly beneficial Settlement.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff Brenda Jonsson respectfully requests that the Court enter an Order granting final approval to the Parties' proposed class action settlement, approving the request for attorneys' fees and costs and Plaintiff's incentive award, and providing such other and further relief as the Court deems reasonable and just.

Dated:   April 16, 2015

Respectfully submitted,

BRENDA JONSSON, individually and on behalf of all others similarly situated

---

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff – Case No. CV13-8166 FMO (SHx)

25

By: */s/ Lance A. Raphael*
     One of Plaintiff's Attorneys

Amir J. Goldstein (Cal. Bar No. 255620)
ajg@consumercounselgroup.com
LAW OFFICES OF AMIR J. GOLDSTEIN
5455 Wilshire Blvd., Suite 1812
Los Angeles, CA 90036
Telephone: (323) 937-0400
Facsimile: (866) 288-9194

Lance A. Raphael (*pro hac vice*)
lance@caclawyers.com
Stacy M. Bardo (*pro hac vice*)
stacy@caclawyers.com
CONSUMER ADVOCACY CENTER, P.C.
180 W. Washington St., Suite 700
Chicago, IL 60602
Telephone: (312) 782-5808
Facsimile: (312) 377-9930

Daniel J. Marovitch (*pro hac vice*)
dmarovitch@marovitchlaw.com
MAROVITCH LAW FIRM, LLC
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
Telephone: (312) 533-1605
Facsimile: (312) 488-4206

*Counsel for Plaintiff*

Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement,
Award of Attorneys' Fees and Costs, and Incentive Award
for Named Plaintiff – Case No. CV13-8166 FMO (SHx)
26