# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| BRENDA JONSSON, individually and on behalf of all others similarly situated, | Case No. CV 13-8166 FMO (SHx) |
|---|---|
| Plaintiff, | **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF ATTORNEY'S FEES, COSTS, & INCENTIVE AWARD** |
| v. | |
| USCB, INC., a California corporation d/b/a USCB AMERICA, | |
| Defendant. | |

Having reviewed and considered plaintiff's unopposed Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff ("Motion"), and the oral argument presented during the final approval hearing held on May 21, 2015, the court concludes as follows.

## INTRODUCTION

Plaintiff filed this class action against defendant USCB, Inc., d/b/a USCB America ("USCB" or "defendant") on November 5, 2013, asserting causes of action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. (See Complaint at ¶¶ 32-46). On May 29, 2014, plaintiff filed a First Amended Complaint ("FAC"), reasserting the TCPA and FDCPA claims, (see FAC at ¶¶ 36-53), and adding a claim pursuant to California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788, et seq. (See id. at ¶¶ 54-60).

On January 26, 2015, the court granted preliminary approval of the settlement, appointed

Kurtzman Carson Consultants ("KCC") as the claims administrator, and directed KCC to provide notice to the class members. (See Court's Order of January 26, 2015, at 28). The court set May 21, 2015, as the date for the final approval hearing. (See id. at 29).

## BACKGROUND

I.   PLAINTIFF'S CLAIMS.

Plaintiff and the putative class members are individuals residing within the United States who allege that they received unauthorized and mistaken automated calls from defendant to their cellular phones in an attempt to collect outstanding debts. (See FAC at ¶¶ 3, 12-15 & 26).

Plaintiff alleges that USCB, a debt collector, (see FAC at ¶ 6), contacts debtors and third parties by telephone in connection with consumer debts and that many of the calls are "made to numbers assigned to cellular telephones." (Id. at ¶ 11). Through third parties Five9, Inc. ("Five9") and Global Connect, L.L.C. ("Global Connect"), (see id. at ¶ 23), USCB utilizes automatic dialing and artificial/prerecorded voice technology to make such calls. (See id. at ¶¶ 22-23). For many consumers who received such calls during the class period, USCB acquired their telephone numbers through "skip tracing" or another indirect method, rather than from the individual consumers. (See id. at ¶ 14).

According to plaintiff, USCB repeatedly made such calls to plaintiff's cellular phone in an attempt to collect a debt she did not owe. (See FAC at ¶¶ 16-17). Indeed, the calls reference a person whose name plaintiff has never used; nor does plaintiff know anybody with that name. (See id. at ¶¶ 18-19). Plaintiff called USCB "at the (855) 233-6432 number provided in some of its messages as a number to contact if USCB had called the wrong person" to request that it discontinue calling her telephone number. (See id. at ¶ 24). Despite her request, USCB continued to call plaintiff using "an autodialer and/or artificial or prerecorded voice." (Id.).

Plaintiff alleges that USCB violated the TCPA by using autodialers and an artificial or prerecorded voice in "calls to the cell phones of Plaintiff and the other members of the Class." (FAC at ¶¶ 39-41). Plaintiff also alleges that USCB violated the FDCPA's prohibition against "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken[,]" (id. at ¶¶ 50) (citation omitted) (first alteration in original), by telling class members "to call (855)

233-6432 if Defendant had called the wrong number, so that the called party's telephone number could be removed from the list of numbers to be called." (Id. at ¶ 51). According to plaintiff, "[i]mplicit in this message is the threat that, unless the consumer takes the affirmative step of calling Defendant and notifying it of the wrong number or directly requesting that the calls stop, Defendant will continue to make its autodialed and/or artificial or prerecorded voice calls to the consumer's phone, in violation of . . . the TCPA." (Id.). "As such, Defendant's threat to continue making illegal autodialed and/or artificial or prerecorded voice calls in violation of the TCPA constituted a threat to take any action that cannot legally be taken[,] in further violation of Section 1692e(5) of the FDCPA." (Id.) (internal quotation marks omitted) (alteration in original). USCB's alleged violations of the TCPA and FDCPA, in turn, constituted a violation of the Rosenthal Act. (See id. at ¶¶ 54-60).

II.     THE SETTLEMENT AGREEMENT.

The Settlement Agreement requires USCB to pay $2,750,000 into a Settlement Fund, (see Class Action Settlement Agreement ("Settlement Agreement") at §§ B(35) & D(1)), which is 91.6% of the applicable insurance policy limit. (See Court's Order of January 26, 2015, at 4). From the Settlement Fund, the Settlement Agreement provides for payment of notice and administration costs, which shall not exceed $394,000, (see Settlement Agreement at § D(1)(a)), an incentive award to the class representative of no more than $10,000, (see id. at § D(1)(b)), attorney's fees equal to 30% of the Settlement Fund, and out-of-pocket costs and expenses not to exceed $50,000. (See id. at § D(1)(c)). The remaining monies in the Settlement Fund will be distributed on a pro rata basis to class members who submit timely and valid claim forms. (See id. at § D(1)(d)). Should the court award less than the expected or requested notice and administration costs, attorney's fees and costs, and incentive award, the funds shall remain in the Settlement Fund for distribution to the class. (See id.). Any funds remaining from checks left uncashed after 120 days after mailing will be distributed, subject to the court's approval, to the National Consumer Law Center in Boston, Massachusetts, as a cy pres recipient. (See id. at § D(1)(e)).

The Settlement Agreement also provides prospective relief to the class by requiring USCB to partner, for a five year period, with Neustar, a company that employs realtime scrubbing

services on all telephone numbers placed into a call database, to determine whether a number is a cellular phone number. (See Settlement Agreement at § D(2)). If the telephone number is determined to be a cellular phone number, Neustar will analyze whether the name of the debtor on the account assigned for collection is the same name associated with its scrub results. (See id.). If the names do not match, USCB will remove the number from its dialing system. (See id.). According to USCB, the estimated cost of implementing this procedure is approximately $315,000. (See Court's Order of January 26, 2015, at 5). If USCB breaches this provision of the Settlement Agreement and fails to cure following notice by plaintiff, plaintiff will be entitled to seek an order "to enforce the injunctive relief aspects of th[e Settlement] Agreement and will be entitled to any and all reasonable attorneys' fees and costs incurred in enforcing" the Settlement Agreement. (See Settlement Agreement at § D(2)).

Upon final approval of the Settlement Agreement, class members who did not validly opt out the settlement will release claims arising under the TCPA, the FDCPA, and the Rosenthal Act, "that were asserted or arise from the facts alleged in the Complaint and [FAC] . . . and that relate to Defendant making or causing to be made autodialed and/or prerecorded or artificial voice calls to the Settlement Class Members' cellular phones between November 5, 2009 and May 15, 2014." (Settlement Agreement at § D(3)(a)). The release does not "release any alleged debts owed to Defendant or the original creditor for whom [USCB] was attempting to collect the alleged debt or impact Defendant's rights to take action to collect." (Id. at § D(3)(b)). Nor does the release "impair or limit any right or cause of action by the [class members] to dispute . . . debts or by [USCB] to collect such debts." (Id. at § B(31)). Finally, the release is to "be construed to exclude, and shall not impair, any claims currently pending against Defendant in any court of competent jurisdiction or any arbitral forum as of the date of the Preliminary Approval Order." (Id. at § D(3)(a)). Plaintiff Jonsson and USCB agreed to a more comprehensive release. (See id. at § D(3)(d)).

The court preliminarily approved the class defined in the Settlement Agreement. (See Court's Order of January 26, 2015, at 28).

4

III.     NOTICE TO CLASS.

KCC, the court-approved claims administrator, was engaged to, among other things: mail the Notice of Settlement ("Postcard Notice"); make the Notice of Class Action Settlement ("Long Form Notice" or "Website Notice"), Claim Form, and Request for Exclusion Form available to class members; develop and administer a website through which class members could submit claim forms and obtain settlement-related information and documents; conduct an internet banner ad campaign; and issue a press release. (See Motion, Exhibit ("Exh.") 1 (Declaration of Lacey Racines Re: Notice Procedures ("Racines Decl.")) at ¶ 3). On or before February 25, 2105, after conducting a reverse address lookup, and updating addresses using the National Change of Address system maintained by the U.S. Postal Service, KCC caused Postcard Notices to be mailed to 418,731 class members. (See id. at ¶¶ 9-12 & 18). Of those, 23,488 were returned due to improper or insufficient addresses. (See id. at ¶ 22).

On or before February 25, 2015, KCC caused an Interactive Voice Response ("IVR") system to be established at 877-437-6490 to provide settlement-related information and record requests for notice documents. (See Racines Decl. at ¶ 13). KCC also caused a website to be established to provide information and permit class members to download settlement-related documents and forms. (See id. at ¶ 14). KCC also developed an internet banner ad campaign, which targeted adults who own a cell phone. (See id. at ¶ 16). Ten million internet banner impressions were purchased and appeared between February 25, 2015, and March 18, 2015. (See id.). A total of 10,100,691 unique impressions were delivered. (See id.). Finally, on February 25, 2015, a press release was distributed nationally via PR Newswire to approximately 6,450 media outlets, which was picked up by 225 websites, including the Boston Globe, Washington Business Journal, San Francisco Business Times, and Miami Herald. (See id. at ¶ 17).

As of May 11, 2015, KCC had received 13 timely requests for exclusion from class members. (See Supplemental Declaration of Lacey Racines Re: Filing of Request for Exclusion Forms and Claims Filed ("Supp. Racines Decl.") at ¶ 2). Additionally, 45 class members submitted both exclusion forms and claim forms. (See id. at ¶ 4). Of these, 24 subsequently indicated they

5

intended to file claim forms, and two indicated they intended to file exclusion forms. (See id. at ¶ 4). KCC was unable to contact the remaining 19 class members via telephone, (see id.), and has therefore sent a notice of deficient filing to these individuals to determine their intention. (See id.).

KCC also received requests for exclusion from eight non-class members, (see Supp. Racines Decl. at ¶ 3), and requests for exclusion along with claims forms from 33 non-class members. (See id. at ¶ 5).

As of May 11, 2015, KCC has received 23,938 claim forms, of which 21,118 were valid and timely. (See Supp. Racines Decl. at ¶¶ 6-7). After deducting the class notice administrative costs, requested attorney's fees and costs, and incentive payment, each of the class members who submitted timely and valid claim forms will receive approximately $71.16. (See id. at ¶ 15). If the claims of the 378 class members who submitted valid but untimely claim forms are considered, (see id. at ¶ 11), each claimant will receive approximately $69.90, (see id. at ¶ 16), and if the claims of the 32 class members who submitted deficient claim forms are also considered, (see id. at ¶ 8), each claimant will receive approximately $69.80.[1] (See id. at ¶ 16).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23[2] provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Service Com'n of City and County of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, 506 U.S. 953 (1992) (internal quotation marks and citation omitted), who must examine the settlement for "overall fairness." Hanlon v. Chrysler Corp., 150

---

[1] These claimants shall be included in the distribution of the Settlement Fund.

[2] All "Rule" references are to the Federal Rules of Civil Procedure.

F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts "have the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." Id. (internal quotation marks and citations omitted).

In order to approve a settlement agreement in a class action, the court must conduct a three-step inquiry. First, it must assess whether defendant has met the notice requirements under the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1715(d). Second, it must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

In determining whether a settlement agreement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

However, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id. District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Id. at 947 (internal quotation marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from the class

funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than added to the class fund[.]" Id. at 947 (internal quotation marks and citations omitted).

## DISCUSSION

I.    FINAL APPROVAL OF CLASS SETTLEMENT.

    A.    <u>Class Action Fairness Act</u>.

When a settlement is reached in a class action case, CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. See id. The court is precluded from granting final approval of a class action settlement until the CAFA notice requirement is met. "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]." 28 U.S.C. § 1715(d).

Here, KCC provided the required CAFA notice and supplemental CAFA notice to the Attorney General of the United States, the Attorneys General of all 50 states and the District of Columbia, and the Attorneys General for the five territories and parties of interest in this litigation. (See Racines Decl. at ¶¶ 4-6). KCC received no responses or objections. (See id. at ¶ 7)). The court, therefore, finds that defendant has complied with CAFA's notice requirements.

    B.    <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Court's Order of January 26, 2015, at 28). Because circumstances have not changed, and for the reasons set forth in its Order of January 26, 2015, the court reconfirms its order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Group Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

C.  Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Court's Order of January 26, 2015, at 26-27). As discussed above, KCC complied with the court-approved class notice program. Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, their rights to exclude themselves from the action, and their rights to object to the proposed settlement. (See Court's Order of January 26, 2015, at 26-27).

D.  Whether Class Settlement is Fair, Adequate and Reasonable.

1.  **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation.**

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement agreement]." Adoma, 913 F.Supp.2d at 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

While plaintiff is "confident in the merits" of the case, (see Motion at 12), she asserts that further litigation would not confer any substantive benefit to the class given the "burning limits provision in USCB's insurance policy." (Id.). The court agrees. USCB's financial position and its limited insurance policy make it doubtful the class would benefit from further litigation. (See Court's Order of January 26, 2015, at 20); see also Grannan v. Alliant Law Group, P.C., 2012 WL

9

216522, *6 (N.D. Cal. 2012) ("Counsel determined that [defendant]'s insurance policy, totaling $1,000,000.00, was the sole source of funds from which plaintiffs could recover. Although the TCPA contemplates an award of at least $500 in statutory damages per violation, the discovery conducted revealed that the amount of statutory damages warranted by the number of violations significantly exceeded [defendant]'s only available source of funds.") (internal citation omitted). In short, the court finds that these factors support a finding that the Settlement Agreement is fair, adequate, and reasonable.

### 2. The Risk of Maintaining Class Action Status Through Trial.

Since plaintiff had not yet filed a motion for class certification, there was a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement. See Gardner v. GC Services, LP, 2012 WL 1119534, *4 (S.D. Cal. 2012) (noting that "because settlement was reached prior to a hearing on Plaintiff's motion for class certification, settlement was reached at a time when there was still a risk that the class would not be certified by the Court.").

### 3. The Amount Offered in Settlement.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the Settlement Agreement, the court concluded that the settlement amount was "fair and adequate[.]" (Court's Order of January 26, 2015, at 21). Accordingly, this factor also weighs in favor of granting final approval.

### 4. The Extent of Discovery Completed and Stage of Proceedings.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527 (internal quotation marks and citation omitted). The court previously examined these factors at length and determined that the

10

settlement "was reached through arms-length negotiation[,]" (see Court's Order of January 26, 2015, at 19), and that "the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions." (Id.). Accordingly, this factor also warrants approval of the settlement.

### 5. The Experience and Views of Counsel.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted). As this court previously determined, plaintiff's attorneys are experienced in consumer class actions and the claims asserted in this action. (Court's Order of January 26, 2015, at 13). Based on this, the court finds that this factor supports approval of the settlement agreement.

### 6. The Presence of a Government Participant.

There is no government participant in this matter. Accordingly, this factor is not relevant. See, e.g., Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

### 7. The Reaction of Notified Class Members to the Proposed Settlement.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, KCC received 21,118 valid and timely claim forms.[3] (See Supp. Racines Decl. at ¶ 7). Only 13 class

---

[3] Moreover, the class members who appeared at the final fairness hearing, (see Supplemental Filing to Plaintiff's Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff at 2), will be deemed valid claimants eligible to receive a pro rata portion of the Settlement Fund.

11

members have requested exclusion,[4] (see id. at ¶ 2), and significantly, there were no objections to the settlement.[5] (See Racines Decl. at ¶ 25).

The lack of objections and limited exclusions supports approval of the settlement. See Franco v. Ruiz Food Products, Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when out of the 2,385 class members, there were no objections and only 56 class members opted out).

E.  Whether the Settlement is the Product of Collusion.

Because the parties negotiated and reached a settlement prior to formal certification of the classes, the court must ensure that the settlement was not the product of collusion. See Bluetooth, 654 F.3d at 947-48. In granting preliminary approval of the settlement, the court carefully scrutinized the settlement and concluded that "the overall record in this case[] evidence[s] that the parties' settlement was reached through arms-length negotiations [and t]here is no evidence or suggestion of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties." (Court's Order of January 26, 2015, at 18).

With respect to "signs" of collusion, the court notes that, unlike Bluetooth, where the class received no monetary award, class members here will be receiving monetary relief. (See

---

[4] Another 19 class members submitted both a claim form and an exclusion form and have not yet indicated their true intention. (See Supp. Racines Decl. at ¶ 4).

[5] Class counsel confirmed at the final fairness hearing that no objections or additional exclusions have been received since the filing of the Supplemental Racines Declaration. Although several putative class members appeared at the hearing, none elected to speak. However, one individual purported to speak on their behalf and stated that he wanted to voice his opinion that the settlement did not have "any teeth" and will not result in any change in defendant's policies or practices. However, upon the court's questioning, it was determined that the individual had not read the Settlement Agreement and was therefore not aware of the settlement's significant injunctive component.

Settlement Agreement at §§ B(35) & D(1)). Moreover, the parties here did not negotiate a "clear sailing" arrangement whereby attorney's fees are to be paid "separate and apart from class funds[.]" See Bluetooth, 654 F.3d at 947. Rather, any award of attorney's fees will be paid from the class funds per the terms of the Settlement Agreement. (See Settlement Agreement at § D(1)(c)). Finally. pursuant to the Settlement Agreement, the entire settlement amount will be distributed, and no funds will revert to defendant. (See id. at §§ D(1)(d) & D(1)(e)). In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion among the parties.

II.     AWARD OF ATTORNEY'S FEES AND COSTS & SERVICE AWARD.

    A.     <u>Attorney's Fee Award</u>.

The Settlement Agreement provides for an award of attorney's fees equal to 30% of the Settlement Fund and out-of-pocket costs and expenses not to exceed $50,000. (See id. at § D(1)(c)). Class counsel seek $ 825,000 in attorney's fees and $18,342.37 in costs. (See Motion at 20).

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." Id. at 942. However, such "discretion must be exercised so as to achieve a reasonable result." Id.

Under the percentage-of-the-fund method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Hanlon, 150 F.3d at 1029. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Id. The actual percentage, however, varies depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted); see

also Vandervort v. Balboa Capital Corp., 8 F.Supp.3d 1200, 1209 (C.D. Cal. 2014) ("In 'megafund' cases, fees will commonly be under the benchmark, while in smaller cases – particularly where the common fund is under $10 million – awards more frequently exceed the benchmark.").

Courts consider the following factors when determining the benchmark percentage to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-51 (9th Cir. 2002).

### 1. **The Results Obtained for the Class**.

"The result achieved is a significant factor to be considered in making a fee award." In re Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"). In addition to monetary relief, the Settlement Agreement provides for significant changes in defendant's business practices. (See Court's Order of January 26, 2015, at 21-22). Such non-monetary relief is "a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees[.]" Staton, 327 F.3d at 974 (internal quotation marks omitted); see also Vizcaino, 290 F.3d at 1049 (upholding fee award where "counsel's performance generated benefits beyond the cash settlement fund"); Wren, 2011 WL 1230826, at *29 (approving a $27,000,000 settlement with an average award to class members of $207.69 and 42% of the settlement amount awarded as attorneys' fees because, in part, "the results achieved . . . include both monetary and injunctive relief"). Accordingly, this factor weighs in favor of class counsel's fee request.

### 2. **The Risk of Litigation**.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." In Re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008). Here, since plaintiff had not yet filed a motion for class certification, there was a risk that the class would not be certified, (see, supra, at § I.D.2), based on, among other things, the issue of consent. See also Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation

of a requested fee); Rose v. Bank of America Corp., 2014 WL 4273358, *12 (N.D. Cal. 2014) (agreeing with class counsel that "there was a significant risk because the issue of prior express consent is an open question"). And as plaintiff recognizes, any recovery would face due process arguments on appeal and would likely not be collectable given USCB's financial condition. (See Motion at 15).

### 3. The Skill Required and Quality of Work.

The "prosecution and management of a complex national class action requires unique legal skills and abilities." Omnivision, 559 F.Supp.2d at 1047 (internal quotation marks omitted). As noted above, class counsel are experienced in consumer class actions and the claims asserted in this action. See supra at § I.D.5. This factor weighs in favor of granting the requested fee.

### 4. The Contingent Nature of the Fee.

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." Knight v. Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009). Here, class counsel took this case on a contingent basis.[6] (See Motion, Exh. 2 (Declaration of Plaintiff's Attorney Lance A. Raphael in Support of Award of Attorney's Fees at ¶ 41(c)). Accordingly, this factor also supports the requested fees.

### 5. Awards Made in Similar Cases.

The requested fee award is consistent with at least one other TCPA case in this district. See Vandervort, 8 F.Supp.3d at 1210 (approving an award of 33% of settlement fund for fees and costs in a TCPA case). The court, therefore, finds that the requested fee award in this case is reasonable.

Consideration of the foregoing factors supports the request for attorney's fees in the amount of 30% of the settlement fund. The court, therefore, is satisfied that a lodestar "cross-check" is not required. See Craft v. County of San Bernardino, 624 F.Supp.2d 1113, 1122 (C.D.

---

[6] Class counsel further confirmed this fact during the final fairness hearing.

1  Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful
2  reference point.").

   B.   Class Representative Incentive Award.

Pursuant to the Settlement Agreement, plaintiff requests that the court grant her an incentive award of $10,000. (See Motion at 23; Settlement Agreement at § D(1)(b)).

In the Court's Order of January 26, 2015, the court undertook a thorough examination of the fairness and adequacy of the incentive award at issue, applying the careful scrutiny required in this Circuit. (See Court's Order of February 20, 2014, at 22-25); see Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement approval and instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives."); Staton, 327 F.3d at 948-49. Based on its review of the record, the court determined "that the incentive award is warranted based on [plaintiff's] effort to 'protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation[,]'" (Court's Order of January 26, 2015, at 25), and does not call into question whether plaintiff received unduly preferential treatment. (Id. at 24). Moreover, no class member has objected to the requested incentive payment. (See Racines Decl. at ¶ 25). The court therefore concludes the incentive award requested by plaintiff is fair and reasonable.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's unopposed Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Costs, and Incentive Award for Named Plaintiff **(Document No. 76)** is **granted** as set forth herein.

2. The court hereby grants final approval to the parties' Class Action Settlement Agreement ("Settlement Agreement") (Document No. 70-1). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's length and informed

negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to, and the settlement fund shall be administered and paid out in accordance with, the terms of the Settlement Agreement and this Order.

3. The settlement class is certified under Federal Rule of Civil Procedure 23(c): All members of the class preliminarily approved on January 26, 2015, who did not properly and timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

4. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

5. The court affirms the appointment of plaintiff Brenda Jonsson as Class Representative.

6. The court affirms the appointment of Lance Raphael and Stacy Bardo of the Consumer Advocacy Center, P.C., Dan Marovitch of the Marovitch Law Firm, LLC, and Amir Goldstein of the Law Offices of Amir J. Goldstein as class counsel.

7. Plaintiff Brenda Jonsson shall be paid an incentive payment of $10,000, out of the settlement fund, in accordance with the terms of the Settlement Agreement.

8. Class counsel shall be paid $825,000.00 in attorney's fees, and $18,342.37 in costs, out of the settlement fund, in accordance with the terms of the Settlement Agreement.

9. The settlement administrator, Kurtzman Carson Consultants, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement, in an amount not to exceed $394,000.00 from the settlement fund.

10. The court approves the designation of National Consumer Law Center in Boston, Massachusetts, as the cy pres beneficiary of any unclaimed settlement funds pursuant to the Settlement Agreement.

11. All class members who did not validly and timely request exclusion from the settlement have released claims against defendant, as set forth in the Settlement Agreement.

12. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this court.

13. Without affecting the finality of this order in any way, the court hereby retains

1 | jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and
2 | administering the order and Judgment, as well as the Settlement Agreement itself.
3 |     14. Judgment shall be entered accordingly.
4 | Dated this 28th day of May, 2015.

                                                          /s/
                                     Fernando M. Olguin
                                 United States District Judge